Augustus. Meyers, Respondent, v. Lawson C. Rich and D. K. Martin Roofing and Manufacturing Company, Respondents; Charles N. Talbot, as Assignee for the Benefit of Creditors of Andrew J. Robinson, Appellant, Impleaded with Others.— Judgment reversed, and judgment directed for defendant, dismissing complaint on the merits, without costs.— Appeal from a judgment entered upon the decision of the court after a trial at the New York Special Term.—

Per Curiam: The questions involved on this appeal are the same as those under consideration in the case of *Kane Co.* v. *Kinney* (*ante*, p. 163); and for the reasons assigned in the opinion in that case the judgment appealed from must be reversed, and judgment directed for the defendant dismissing the complaint · upon the merits, without costs. Present — Van Brunt, P. J., Patterson, O'Brien and Laughlin, JJ.

Robert P. Staats, Respondent, v. Moses G. Byers, Appellant.— Judgment and order affirmed, with costs.— Appeal from a judgment, entered upon the verdict of a jury and from an order denying the defendant's motion for a new trial, made upon the minutes.—

Patterson, J. : This action was brought to recover damages for the breach of a warranty given on the sale of horses by the defendant to the plaintiff. On the trial the plaintiff had a verdict, and from the judgment entered thereon and from an order denying a motion for a new trial the defendant appeals. It appeared in evidence that on the 2d of January, 1897, the plaintiff purchased from the defendant a pair of cob horses—one brown and one black—and that he received a warranty in writing from the defendant in the following words: "Warranted sound, kind and gentle on delivery." The record contains evidence of conversations had between the parties during the negotiations for the purchase of the horses, and from that evidence it appears that the plaintiff told the defendant that he wanted a pair of horses that a lady could drive and that were safe for his wife and children to ride behind; that he wanted them for his place in the country, a gentle team that his wife could drive; that could be driven singly or double. The defendant's agent showed the plaintiff a pair of horses, the same that were subsequently bought, and said that they were gentle in every way; that they could be driven either double or single, and that a lady could drive them without any trouble, and also that a warranty would be given at the time of sale. The horses were delivered to the plaintiff on the second of January, and were that day sent to a stable in the city of New York, and the next morning were taken to Long Branch by boat. They were driven from the stable in New York singly, the plaintiff being in a carriage drawn by one of the horses and the coachman of the plaintiff driving the other. On the way to the boat one of the horses·reared in the shafts and almost fell back on the plaintiff, swerving to the right and overturning a street cleaner's cart. The horse was restless and nervous. While on the way down to the boat one of the horses chewed up his blanket. Arriving at Long Branch, it was put in a stable, and it tore down the manger. · On the day following the arrival of the horses at Long Branch, the plaintiff undertook to drive one of them to the railroad station and the horse would not stand at the door, but would rear and plunge; at the station ·he reared and came very near going into another vehicle· with his forefeet. The plaintiff, in order to get into the carriage, would have to jump in as quickly as he could; the horse would stand only for a second. The other horse was not well broken. If his head was turned in one direction, he would go in another; he would not stand quietly; he would jump over puddles in the road. There was evidence to show that both horses were vicious and unruly and not sound, kind and gentle within the terms of the written warranty; that one of them was a "lugger" and another "muly," and the defects were manifested so soon after the purchase as to authorize the inference that they must have existed at the time the warranty was given. There was evidence on the part of the defendant tending to show that, although the horses were high spirited, they were not vicious nor unsafe nor other than as warranted, but, upon the whole case, the jury were authorized to find that the warranty was broken. We find no error ·in the record in the rulings of the court upon evidence nor in the charges to the jury. It is claimed, however, by the appellant that he was entitled to an instruction, which his counsel requested the court to give, but which was refused. That request is in the following words: "I ask your Honor to

68    634
Case 2
a174 NY 508